## RUDOLPH v. TINSLEY.

(Court of Civil Appeals of Texas. Amarillo. Dec. 9, 1911. On Motion for Rehearing, Jan. 12, 1912.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

Sayles' Ann. Civ. St. 1897, art. 1018, requires plaintiff in error to file with the clerk of the court below, all assignments of error, distinctly specifying the ground on which he relies, and provides that all errors not distinctly specified are waived. Court of Civil Appeals Rule 24 (67 S. W. xv), is to the same effect. Rule 25 (67 S. W. xv) provides that, to be a distinct specification of error, it must point out that part of the proceedings contained in the record in which the error is complained of so as to identify it, and rule 26 (67 S. W. xv) provides that assignments of error which are only expressed in such general terms as that the court erred in its ruling upon the pleadings, etc., when there are more than one, is not sufficient. *Held* an assignment of error in overruling a motion for a new trial, which was not followed by a proposition elucidating the matter complained of, the assignment being treated in appellant's brief as a proposition, would not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. TRESPASS TO TRY TITLE (§ 40*)—ACTIONS—ADMISSION OF EVIDENCE.

Where, in trespass to try title, defendant alleged that plaintiff was not an innocent purchaser for value without notice, and plaintiff sought to show that a book, in which was recorded the deed from the common grantor under which defendant claimed, was not a book of record, and it appeared that some of the conveyances shown by an abstract, approved by plaintiff as a lawyer, were shown in the abstract to have been recorded in the same book, it could not be said that the abstract of title, approved by plaintiff, was not material evidence.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

3. TRIAL (§ 168*)—DIRECTION OF VERDICT—UNCONTRADICTED EVIDENCE.

If the evidence on a question of fact was such that but one conclusion could be reached thereon by an unbiased mind, the court properly directed a verdict thereon.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 376–380; Dec. Dig. § 168.*]

4. DEEDS (§ 211*)—FORGERY—EVIDENCE.

Evidence in trespass to try title *held* to show that a deed upon which defendant relied was not a forgery.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647, 649; Dec. Dig. § 211.*]

5. EVIDENCE (§ 343*)—ANCIENT DOCUMENTS.

Where a deed attacked as a forgery was more than 30 years old at the time of trial,

and had been duly recorded for more than 30 years, a certified copy of the record was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1315–1330; Dec. Dig. § 343.*]

### On Rehearing.

6. APPEAL AND ERROR (§ 232*)—PRESENTATION IN LOWER COURT OF GROUNDS OF REVIEW—OBJECTIONS TO EVIDENCE.

Plaintiff urged on appeal that a certified copy of a deed, the original of which was attacked as a forgery, was improperly received in evidence, on the ground that it showed upon its face that it was a certified copy from the deed records of S. county, while the land was located in M. county, and the statute did not authorize the copy as evidence of title to land in M. county. The objection at trial was that it did not show that it was recorded in J. county and was not taken from a competent record, since when it purported to have been filed, S. county, from the records of which it was claimed to have been copied, was not organized, and the original deed was not of record in J. county. *Held,* that the objection to the certified copy of the deed first raised on appeal could not be considered, being different from that made below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1430, 1431; Dec. Dig. § 232.*]

7. APPEAL AND ERROR (§ 750*)—ASSIGNMENTS OF ERROR—WAIVER.

At the trial of an action of trespass to try title, plaintiff objected to the admission in evidence of a certified copy of a deed, the original of which was attacked by an affidavit of forgery, on the ground that it purported to come from the records of S. county, when that county was not organized when the original was purported to have been filed, and it could not be shown that the deed was not of record in another county, but the assignment of error on appeal asserted that the certified copy was inadmissible, because plaintiff had filed an affidavit of forgery as to the original, which was called to the court's attention when the admission of the evidence was objected to, and was followed by a proposition to the effect that a certified copy of a recorded instrument which is attacked for forgery by the opposite party must be proved by the offering party to be genuine to make it admissible. *Held* that, even if the objection to the admission of a certified copy of the deed was sufficient to require consideration on appeal of the question that it was not admissible because it appeared upon its face to have been a certified copy from the deed records of S. county, while the land conveyed was in M. county, such question was waived by the assignment of error and the proposition following it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074–3083; Dec. Dig. § 750.*]

Error to District Court, Moore County; D. B. Hill, Judge.

Action by C. F. Rudolph against Leslie Tinsley. Judgment for defendant and plaintiff brings error. Affirmed.

C. F. Rudolph, for plaintiff in error. Del W. Harrington, for defendant in error.

GRAHAM, C. J. This cause originated in the district court of Moore county, by plaintiff in error filing in that court on June 23, 1909, his original petition, being in form and substance an ordinary action of trespass to try title; attached thereto, as a part there-

---

of, were memoranda and notice of the written instruments, including their dates, as well as places and dates of record of the instruments on which plaintiff in error relied for recovery of the land.

On July 27 (the transcript shows 1907, but evidently intended for 1909) defendant in error filed his original answer, consisting of a plea of former adjudication, a general denial, a plea of not guilty, and a plea to the effect that plaintiff in error was not an innocent purchaser of the land for value and without notice.

On January 22, 1910, plaintiff in error filed among the papers in the cause his affidavit of forgery, in substance as follows: "Before me, the undersigned authority, on this day personally appeared C. F. Rudolph, plaintiff in the above numbered and entitled cause, who being by me duly sworn, says that he believes the certain instrument filed in this cause by defendant for the purpose of offering same in evidence in support of his title, being a certified copy of a purported deed, executed by James Leonard, in favor of Samuel H. Taylor on the 26th day of November, 1878, conveying the section No. 13, Block Q, H. & G. N. R. R. Co. survey, and appearing to be taken from certain records of Sherman county, Texas, is a forgery, and that in fact the original of such deed was never executed by the said James Leonard." The cause was tried before a jury, but at the conclusion of the introduction of the evidence the court gave a peremptory instruction for defendant in error, and verdict was returned and judgment rendered accordingly on January 26, 1910. The case is before us on writ of error and plaintiff in error bases his right to a reversal on five assignments of error, brought forward in his brief.

[1] Under article 1018, Sayles' Civil Statutes, and rules 24, 25, and 26 (67 S. W. xv) for the government of our Courts of Civil Appeals, we will not consider the fifth assignment which is based on the action of the trial court in overruling plaintiff in error's motion for a new trial, as said assignment is entirely too general, and is followed by no proposition that in any way elucidates the matter sought to be complained of in the assignment, the assignment itself being treated by plaintiff in error in his brief as a proposition.

[2] Under his fourth assignment, plaintiff in error complains that an abstract of title, with his opinion as a lawyer, approving the title therein attached, was admitted as evidence; the basis of his objections being that said evidence was immaterial.

As defendant in error pleaded that plaintiff in error was not an innocent purchaser for value and without notice, and plaintiff in error, in his evidence, sought to throw suspicion on the book in which the deed from Leonard to Taylor was recorded and as one or more of the conveyances evidenc-

ed by the abstract so approved by plaintiff in error, was by said abstract shown to be of record in the same book, we are not prepared to say that any error was committed by the introduction of the evidence complained of.

Under his second assignment, plaintiff in error complains that the certified copy of the deed from Leonard to Taylor was admitted as evidence, but we think there was ample proof warranting the court in admitting it, and our reasons for thus ruling will appear more fully below where disposition is made of plaintiff in error's third assignment.

Under his first assignment, as shown by his only proposition thereunder, plaintiff in error insists that the verdict and judgment are not supported by the law and the evidence, but we think the record amply sufficient in this respect and therefore overrule said assignment.

Under his third assignment, plaintiff in error challenges the action of the trial court in giving a peremptory instruction to the jury, and, as we view the record, this assignment presents the only serious question brought before us by plaintiff in error in his brief.

Without commenting on the evidence at length, we find that plaintiff in error and defendant in error both deraigned title from and through one James Leonard, who himself acquired the lands in controversy from Gunter & Munson, by warranty deed of date March 17, 1877, which was duly and properly recorded in Jack county, on June 26, 1877; that the evidence introduced was sufficient to vest the title to the lands in controversy in defendant in error, if the original conveyance from James Leonard to Samuel H. Taylor, certified copy of which was read in evidence, was not a forgery; that if the original conveyance from Leonard to Samuel H. Taylor was a forgery, the evidence was such as would require a recovery by plaintiff in error.

[3, 4] It will be thus seen that the only question to decide is, was the evidence on the issue of forgery of the original conveyance from James Leonard to Samuel H. Taylor raised by filing the affidavit of forgery, such as to raise an issue of fact for the jury, or was the evidence on the issue of forgery such as that but one conclusion could be reached by an unbiased mind; for, as we understand the law, if the latter condition prevailed, the trial court acted properly.

The certified copy of the deed in controversy bears date November 26, 1878; shows to be a warranty deed from James Leonard to Samuel H. Taylor; recites a consideration of $1,200 paid; was acknowledged by James Leonard personally before A. H. Coffin, a notary public for Grayson county, Tex., on November 26, 1878, and was filed for record in Jacksboro, Tex., on July 28, 1878, at 8 o'clock, a. m., and recorded in the records of Jack county, Tex., July 29, 1878, at 5

o'clock p. m. by Ed Wolforth, clerk, and covers the land in controversy in this suit.

The certified copy also shows that same was taken from volume P 1, pp. 72 and 73, of the Deed Records of Sherman county, Tex.; that the instrument had been filed in Hartley county, Tex., on November 17, 1908, at 9 o'clock a. m., and recorded the 3d day of December, 1908, in the Deed Records of said county in volume 23, on page 6, as shown by certificate of the clerk of the county court of Hartley county; that it had been filed in Moore county, Tex., December 21, 1908, at 12 o'clock m., and recorded on the same day at 7 o'clock p. m. in the Deed Records of said county in volume 13, pp. 10 and 11, as shown by proper certificate.

On July 24, 1909, by deposition, James Leonard testified that he was 65 years of age; that he resided in Denver, Colo., where he had resided 27 years; that he resided in Denison, Grayson county, Texas, from 1870 to 1878, and was acquainted with a firm at Denison or Sherman, Tex., known as Gunter & Munson, composed of Jot Gunter and W. B. Munson; that he had land dealings with them at numerous times; that the land was mostly located in the Panhandle of Texas; that he did not recollect whether he acquired or owned the land in controversy in this suit, but that if he did ever own it he got it from Gunter & Munson; that he did not remember whether he ever deeded the land to anybody previously to a quitclaim deed to C. F. Rudolph on April 6, 1909, but that he may have done so, either by warranty deed or quitclaim deed, but that if he did he had no recollection as to whom; that personally he had no recollection of the transaction except the quitclaim deed to Rudolph; that he had no recollection of when he purchased the land or how much he paid for it, but that if he ever purchased it it must have been from the firm of Gunter & Munson of Sherman, Tex.; that he was well acquainted with both Jot Gunter and W. B. Munson, and that he was associated with A. H. Coffin in business from about 1877 until March, 1880; that Coffin was a notary public, and that the witness made numerous deeds to different people, all of which were acknowledged before Coffin; that he paid no attention to the land, and did not give a thought to it from 1877 to 1878, after which time he supposed he had disposed of all of his holdings in the county; that he did not pay any taxes on it after 1878, or perhaps not as late as 1878; that he had paid no attention to Panhandle lands since that time. And further testified: "I cannot remember and do not remember who I deeded that section of land to, if I ever deeded it to anybody previously to deeding by quitclaim to C. F. Rudolph; but if it is my signature and the acknowledgment of A. H. Coffin in 1878, it must be that I did deed that section of land to Samuel H. Taylor. If that deed is on record and has my signature, and is acknowledged by A. H. Coffin of Grayson county, Tex., I would say that I must have executed such a deed, although I have no recollection of it whatever."

By deposition, M. G. Nelms testified, July 17, 1909, that he was 46 years of age; was county clerk of Jack county, and resided in Jacksboro, Tex., where he had resided 26 years; that he had been such clerk since November, 16, 1908; that there were in his office 11 original records, containing deeds which conveyed lands in various counties of the Panhandle, some containing more than one county; that he had examined those records for the deed mentioned he could not tell the number of times, and never found the record of that deed in them; that he could not tell whether it is recorded there or not, but that if it was it was not indexed; that the records of the county clerk's office of Jack county show that Ed Wolforth was the county clerk of Jack county, Tex., on the 28th day of July, 1878, and that D. B. Gilliland was county clerk June 5, 1888; that he did not know whether there was kept in the office of the county clerk of Jack county during the year of 1879 a book designated as "Sherman County Book No. 1" or not; that he did not know anything about the records of deeds for Sherman county, Tex., that were kept in Jack county during the time Sherman county was attached to Jack county for judicial purposes as some of the Panhandle records show the records for more than one county in one volume.

William Turner testified by deposition of date July 17, 1909, that he was 34 years of age, resided in Jack county, Tex., where he had resided since February, 1895; that he was clerk of the county court of Jack county, Tex., from 1904 to 1908; that he had carefully turned through the Panhandle record in that county, leaf by leaf, noting the grantor and grantee in each conveyance and the land conveyed in an effort to find a deed from James Leonard to one Samuel H. Taylor, conveying the lands in controversy in this suit; that to the best of his knowledge, after such search, he was able to state that there was no such deed of record in that office during that time dated November 26, 1878, or any other date, filed in said office July 28, 1879, or any other time, covering the land in controversy; that there were a number of records in the county clerk's office of Jack county, containing deeds which convey lands in the various counties of the Panhandle, including Potter, Brisco, Hutchison, and others that he was unable to mention from memory; that those records were in his custody while he was clerk, and that he examined them carefully for the record of the deed inquired about; that the deed inquired about is not recorded there.

C. H. Rowland testified by deposition, taken July 17, 1909, that he was 39 years old; was county clerk of Sherman county, Tex.;

resided in the town of Stratford in said county; that he had held the position of county clerk continuously in that county since December 1, 1906; that on or about the 22d day of April, 1909, he certified to a copy of deed taken by him from the deed records of Sherman county, Tex., purporting to be a deed from James Leonard to Samuel H. Taylor, dated November 26, 1878, filed for record July 28, 1879, recorded in volume 1, at pages 72 and 73 of the records of Sherman county, Tex.; that the volume or book P No. 1 that he referred to is a very small size record about 8 by 13 inches and about an inch thick, that there is marked on the flyleaf in front of said book "Sherman County Book, P No. 1"; that it bears an index in front; that about 116 pages of it appears to have been used for recording of deeds and patents to lands mostly located in Sherman county, Tex., and that possibly some of the lands, the deeds or patents of which are recorded therein, lie over the line in adjoining counties; that the volume has been rebound since he came in the office—the old book binding or cover having worn out a new one was substituted; that on page 117 is a certificate of D. B. Gilliland, clerk of the county court, Jack county, Tex., and C. C. Bullock, deputy, to the effect that pages in that volume from 85 to 116, inclusive, contain true copies of the original record of said several instruments; that the remainder of the volume up to page 358 seem to contain a memoranda in pencil of survey numbers, block numbers, patent numbers, abstract numbers, certificate numbers, etc.; that his authority for calling it a deed record of Sherman county, Tex., is that it had been recognized so far as he knew as a deed record of Sherman county, and appears to have come from Jack county, Tex., to which Sherman county was formerly attached; that the file marks of the instruments recorded in the above-mentioned book seem to bear dates ranging from January 16, 1878, to April 9, 1881, as near as he could remember without a minute examination; that he knew of no other record that contains the same conveyances as are recorded in this book; that there was not, except the pencil memoranda above referred to, any other recorded matter on the succeeding pages of said book after page 117, nor is there any certificate after the certificate referred to on subsequent pages, nor were there other certificates in said book except the certificates of the notaries or other officers before whom the instruments therein recorded were acknowledged; that such certificates, of course, were copies from the original instruments recorded; that the certificate at page 117 in said book is as follows: "The State of Texas, County of Jack: We, D. B. Gilliland, clerk of the county court in and for said Jack county, Texas, and C. C. Bullock, a duly authorized deputy of said clerk, do hereby certify under our official oath of office, that we have carefully

compared the foregoing pages of this volume from page 85 to 116, inclusive, with the original record of the several instruments in said pages contained as the said instruments appear in books 'A Vol. 1,' and 'A, Vol. 2,' Panhandle records of deeds, patents, etc., now in said clerk's office, and we certify that each of the several separate instruments in said pages contained is a true and correct copy of said original record thereof." (Then follow other portions of the certificate not material to the question under consideration.) The certificate closes as follows: "Given under our hand and the seal of said county court at office in Jacksboro, Texas, on the 5th day of June, A. D. 1888." It is signed officially and seal affixed.

C. H. Rowland further testified that Sherman county had a record called the "Minutes of the Commissioners' Court," which was in his custody and which showed the proceedings of the commissioners' court of Sherman county at the various meetings of said court—such as orders or actions taken by said court in an official capacity, and that the earliest entry in said records was on June 22, 1889.

As we view the foregoing testimony, in connection with all other testimony in the record, we think the same insufficient to raise an issue of fact as to whether or not the deed in controversy was a forgery.

It will be observed that James Leonard himself testifies that he was well acquainted with Gunter & Munson, and the individuals composing that firm during the time the deed bears date; that if he ever acquired this land he acquired it from Gunter & Munson, and the title under which both plaintiff in error and defendant in error claim shows that James Leonard did acquire title to the lands in controversy from Gunter & Munson on March 17, 1877, which was forthwith placed of record; that Leonard further testifies that he was associated in business with A. H. Coffin from about 1877 until March, 1880; that he made numerous deeds to different people during that time, all of which were acknowledged before Coffin; and that if the deed in controversy had his signature and was acknowledged before A. H. Coffin he would say that he must have executed such a deed.

As against this testimony, the fact that Nelms, who had been county clerk of Jack county since 1908, found no record of such an instrument in that county, and the further fact that Turner, who was county clerk of Jack county from 1904 to 1908, testified that no such instrument was of record in that office during his term of office, we think does not even tend to prove the forgery of the instrument in controversy.

As the instrument in controversy is found in a book shown at one time to have been kept in the clerk's office at Jacksboro as a deed record for Sherman county, and the certificate of Gilliland as county clerk of

Jack county and of C. C. Bullock as deputy clerk of that county, bears date June 5, 1888, and shows upon its face that the instruments found in the book in question from page 85 to page 116 were transcribed from original records in Jack county, and the certificate in no way explains how the instruments in the book and which precede page 85 came there, it is evident that the record preceding page 85 was at one time the original record kept in Jack county for the record of instruments affecting titles to Panhandle lands, and as the commissioners' court records of Sherman county show that the county was organized as early as June 22, 1889, it is clear that the book from pages 1 to 84 contains the original record of the instruments as filed and recorded in Jack county while the book was kept in that county as a record; and as this book is shown without question to have been used, considered, and recognized as one of the deed records of Sherman county practically since its organization, including pages 1 to 84 thereof, we hold that the book in controversy was a deed record of Sherman county, and that the certified copy made therefrom by the clerk of that county was admissible as evidence.

[5] As the record before us shows that the original deed in controversy was more than 30 years old at the time of the trial and that it had been duly recorded more than 30 years before the trial, the duly certified copy of said record was then admissible, just as the original instrument would have been.

Though the record shows that appellant was county clerk of Sherman county about 1902, he failed to offer any evidence tending to impeach the genuineness or authenticity of the book in controversy or the instrument attacked by his affidavit.

We think the record shows clearly that when Nelms and Turner had charge of the deed records of Jack county, as clerk of that county, during which time they investigated the records there and failed to find any record of the instrument in controversy, that there was in fact no record of said instrument there, as it had theretofore been transferred to Sherman county in the book referred to, and we think therefore that their evidence does not even tend to support the affidavit.

The record before us shows a conveyance by Taylor in 1879 of this land and a prompt registration of the deed in Jack county as well, also, as other conveyances and the recording thereof in the proper county by persons claiming under the deed in controversy as early as 1880, all of which to our minds shows clearly that the original deed attacked by the affidavit was actually executed, as a copy thereof introduced in evidence purports to show.

The record before us further shows that appellee was in possession of the original patent to this land, and that he introduced same as evidence on the trial.

On the question of the introduction of an ancient instrument as evidence, when same has been attacked by affidavit of forgery, it is said, in the case of Cox v. Cock, 59 Tex. 521: "If the party impeaching the deed desires to do so, he is at liberty to proceed to sustain by any lawful testimony his plea of non est factum. If he introduces no proof whatever (the affidavit not being evidence), and the opposing party proves the making of the deed in accordance with some of the modes prescribed by the common law, the genuineness of the deed is established. The jury, in the absence of all proof sustaining the plea of non est factum could not find otherwise."

On the question of the introduction of a certified copy from an ancient record, when the original was attacked by affidavit, it is said in Riviere v. Wilkens, 31 Tex. Civ. App. 454, 72 S. W. 608, "If the certified copy adduced was a copy of a valid record over 30 years old, it was admissible as an ancient instrument, just as the original would have been."

The strongest case we have found, as we view the matter, tending to support appellant's contention, is the case of Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963, but an inspection of that case will show that the purported grantor testified that he did not execute the deed, while as we view the evidence in the record in this case, Leonard, in effect, testifies that he did execute the deed.

Believing that under the record before us not even a suspicion was thrown on the deed attacked by appellant's affidavit, and that the proof, though circumstantial largely, was such as to show beyond any doubt that the original deed in controversy once existed and that it was executed and delivered by James Leonard, and, further, that said deed was recorded in the proper deed record more than 30 years before the trial, and further that the book from which the certified copy was taken was one of the deed records of Sherman county, we hold that the court did not err in giving the peremptory instruction as there was no issue of fact left for the jury to pass upon.

The judgment of the court below will therefore be affirmed, and it is so ordered.

### On Motion for Rehearing.

We have carefully examined the motion for rehearing, as well as the written argument in support thereof, filed by plaintiff in error, and are of the opinion that there is no merit therein.

[6] In his said written argument plaintiff in error, for the first time, either in the trial court or in this court, appears to contend that the certified copy of the deed, the original of which was attacked by an affidavit of forgery, and the introduction of a copy of

which as evidence, is complained of under his second assignment of error in his brief, and referred to in the fourth ground for rehearing, was not admissible as evidence because it shows upon its face to have been a certified copy from the deed records of Sherman county, while the land was in Moore county, the statute not authorizing such copy as evidence of title to land in Moore county.

An inspection of the bill of exception will show that no such objection was made below, and if it could be said that the objections of plaintiff in error to the introduction of this certified copy as evidence, as shown by the bill of exception, was broad enough in its scope to cover the question now sought to be raised, we think plaintiff in error cannot now be heard to urge such a proposition as a ground for reversal, for the reason that the only assignment of error and proposition brought before this court by plaintiff in error in his brief, based upon the admission of this instrument, does not raise such a question but raises another and different one.

The bill of exception shows that plaintiff in error objected to the introduction of this instrument in the following language: "We object to the introduction of this deed, affidavit being on file alleging that the same is believed to be forged; it does not show to be recorded in Jack county; and our objection goes to the point that it is not taken from a competent record and is therefore not a deed that can be properly introduced in evidence. From the record it purports to come from at the date at which it purports to be filed, there was no Sherman county organized, and we will prove that the deed is not of record in Jack county." Based on this bill of exception, appellant assigned and brought forward in his brief the following error: "The court erred in overruling the objection offered by plaintiff to the introduction in evidence by defendant of the certified copy of deed from James Leonard to Samuel H. Taylor, the plaintiff having filed his affidavit herein, alleging that he believed said deed to be a forgery, and having called the attention of the court to said affidavit, at the time of offering his objection to said testimony, as shown by his bill of exception No. 2."

Only one proposition is submitted under this assignment, as follows: "A recorded instrument of writing or a certified copy of such from the records, offered in evidence by either party, and attacked by the opposite party, is in his belief a forged instrument, by affidavit filed within three days before the trial of the cause, must be proved by the first party to be genuine in order to be admitted in evidence."

[7] We do not believe that the objection urged by plaintiff in error to the introduction of the evidence on the trial below was sufficient to raise the question he now seeks to present, but if we are in error about this,

we feel sure he has waived it, as shown by the assignment and proposition above copied.

Believing that the motion for rehearing, filed herein by plaintiff in error, is without merit, the same is in all things overruled.